BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE FORD FUEL ECONOMY ) <br> MARKETING AND SALES ) <br> PRACTICES LITIGATION ) | MDL No.: _____ |

PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION
FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407 FOR
COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Plaintiffs William Don Cook and Ryan Hubert[1] ("Movants") respectfully submit this brief in support of their Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings.

Movants seek transfer and assignment of all pending Actions[2] against Ford Motor Company ("Ford") related to certain Ford automobiles that were marketed and sold with false fuel-economy ratings identified in several cases filed nationwide as listed in the Schedule of Actions, as well as any subsequently-filed actions involving similar facts or claims, to the United States District Court for the Eastern District of Michigan. As of the date of this motion, there are not less than three substantially-similar Actions, filed on behalf of plaintiffs and proposed nationwide and statewide classes in three different federal district courts alleging similar wrongful conduct by Ford. Movants are plaintiffs in two of the first three cases filed and seek transfer and assignment to the location of Ford's headquarters and principal place of business.

---

[1] Plaintiffs are the named plaintiffs in actions filed in the United States District Court for the Middle District of Alabama and the United States District Court for the Central District of Illinois, respectively.

[2] All defined terms have the definitions assigned to them in Plaintiffs' contemporaneously-filed transfer motion.

All Actions involve common questions of law and fact that arise from Ford's manufacture, distribution, and/or sales of model year 2017 through 2019 Ford automobiles that were marketed and sold with false fuel-economy ratings, including the 2019 Ford Ranger and the 2018 Ford F-150 (the "Vehicles").

**I.     BACKGROUND**

The first Action, *Marshall B. Lloyd v. Ford Motor Company*, No. 19-cv-11319, was filed on May 6, 2019 in the United States District Court for the Eastern District of Michigan, seeking certification of a nationwide class of all persons who purchased or leased a Ford vehicle whose fuel economy ratings were less than the fuel economy ratings produced by the applicable federal test, including but not limited to the model year 2019 Ford Ranger truck.  The *Lloyd* action also defined "Affected Vehicles" to include, upon information and belief, the F-150 series trucks and possibly any and all other Ford vehicles.  That case has been assigned to Judge Robert H. Cleland.  Plaintiff Lloyd is not represented by Movants here.

The second Action, *William Don Cook v. Ford Motor Company*, No. 19-cv-00335 was filed on May 8, 2019 in the United States District Court for the Middle District of Alabama, seeking certification of nationwide and Alabama classes of purchasers and lessees of model year 2017 through 2019 Ford Vehicles.  Plaintiff Cook is represented by attorneys from Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. and Bailey & Glasser LLP.  Beasley Allen and Bailey & Glasser are among the Movants here.

The third Action, *Ryan Hubert v. Ford Motor Company*, No. 19-cv-02125, was filed on May 9, 2019 in the United States District Court for the Central District of Illinois, seeking certification of nationwide, Illinois, and Michigan classes of purchasers and lessees of model year 2017 through 2019 Ford Vehicles.  That case has been assigned to Judge Colin S. Bruce.  Plaintiff

Hubert is represented by attorneys from DiCello Levitt Gutzler LLP, The Miller Law Firm, P.C., and Sauder Schelkopf LLC. DiCello Levitt, The Miller Law Firm, and Sauder Schelkopf are among the Movants here.

The complaints in these Actions are substantively identical in several ways. First, they each concern the same Ford vehicles, namely the 2019 Ford Ranger and the Ford F-150 series trucks. Each of the complaints alleges that additional Ford vehicles may be implicated. Second, each of the complaints alleges that Ford has engaged in fraudulent and deceptive conduct regarding its fuel-economy ratings, including misrepresenting and/or miscalculating certain road testing factors (*e.g.*, road load—a resistance level used in vehicle dynamometer testing) during internal testing processes in order to report that its automobiles are more fuel efficient than they actually are. Each of the complaints specifies that Ford's own employees questioned its testing practices and calculations with respect to fuel economy ratings since at least September 2018, but Ford took no action to correct the problems or misstatements made to consumers regarding the promised fuel economy. The complaints also specify that Ford publicly revealed in February 2019 that it has concerns with its fuel economy calculations, including in an annual report field with the SEC and a press release indicating that it was hiring an outside firm to investigate the methods and calculations used to measure fuel economy and emissions. Third, the Actions filed to date seek certification of nearly identical nationwide and/or state classes:

| The *Lloyd* Action (E.D. Mich.) | The *Cook* Action (M.D. Ala.) | The *Hubert* Action (C.D. Ill.) |
|---|---|---|
| Nationwide class: "All persons who purchased or leased a Ford vehicle whose EPA fuel economy ratings were less than the fuel economy ratings produced by the applicable federal test, including but not limited to | Nationwide class: "All persons or entities in the United States who are current or former owners and/or lessees of a Class Vehicle" | Nationwide class: "All persons or entities in the United States who are current or former owners and/or lessees of a Class Vehicle" |

| the model year 2019 Ford Ranger truck." | | |

Fourth, the lawsuits allege substantively identical claims regarding Ford's fraud and deception, including fraud, negligent misrepresentation, unjust enrichment, breach of warranty, and violations of consumer protection statutes of several states, including Alabama, Illinois, and Michigan.

While the claims asserted differ slightly (but immaterially) from complaint to complaint, each Action names Ford as a defendant, alleges materially identical facts, and seeks certification of nationwide and/or statewide classes comprised of Ford automobile purchases and lessees. Consistent with the Panel's course in past automobile-related litigation, Plaintiffs respectfully seek transfer of the Actions to the United States District Court for the Eastern District of Michigan, for coordinated or consolidated pretrial proceedings. Each of the Actions filed against Ford contains common questions of fact. Moreover, because Ford's actions have received a great deal of publicity and because Ford is addressing concerns via press releases acknowledging the fuel-economy problems, a number of tag-along cases will almost certainly be filed in the near future.

## II. LEGAL STANDARD

Transfer is appropriate when actions pending in different judicial districts involve similar questions of fact such that coordinating or consolidating pretrial proceedings would "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407. In relevant part, Section 1407 provides as follows:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.

*Id*. *See also In re Nifedipine*, 266 F. Supp. 2d 1382, 1382 (J.P.M.L. 2003).

## III. ARGUMENT

The Actions, and the several tag-along actions that will presumably follow, are appropriate for Section 1407 transfer because they involve common issues and transfer will benefit the parties, the witnesses, and the courts. Further, given Ford's location in the Eastern District of Michigan and the fact that most witnesses will be located in that jurisdiction, transfer to that district is the most appropriate.

### A. Transfer Is Appropriate Under 28 U.S.C § 1407.

"The purpose of § 1407. . . is to eliminate the potential for conflicting contemporaneous pretrial rulings by coordinate district and appellate courts in multidistrict related civil actions." *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 491-92 (J.P.M.L. 1968). Centralization is meant to "eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel, and the judiciary." *In re Ethicon Physiomesh Flexible Composite Hernia Mesh Products Liability Litigation*, 254 F. Supp. 3d 1381, 1382 (J.P.M.L. 2017).

Pretrial transfer under section 1407 is appropriate here. The Actions involve materially identical facts, the same defendant, and similar proposed classes. The number of cases will likely grow. Unless these cases are transferred for pretrial proceedings, the parties will incur excessive costs due to duplicative discovery, and will face the risk of inconsistent rulings on a variety of matters. The Panel has repeatedly found that class actions involving automobiles and deceptive sales practices satisfy the standard under section 1407.

#### 1. The Actions Involve Common Factual Issues.

Each of the constituent Actions will require adjudication of whether Ford violated state deceptive trade practice statutes, warranty laws, and tort laws in its manufacturing, marketing, and sale of Vehicles. Moreover, a core fact in each of these cases is whether, as has been widely reported, Ford manufactured, distributed, leased, or sold Vehicles when it knew or should have

known that the fuel-economy ratings of the Vehicles were false.  In other words, whether Ford misrepresented and/or concealed from consumers the true fuel-economy of the Vehicles will be critical to adjudicating each of the constituent Actions in this proposed multidistrict litigation against Ford.

This core fact is not the only fact common across all of the Actions. Transfer is further appropriate here because many other common questions exist, including:

- when Ford first learned of the false fuel-economy ratings the Vehicles;
- whether Ford's statements concerning fuel economy constitute actionable statements for purposes of deceptive trade practice or warranty claims;
- whether Ford intentionally designed, manufactured, marketed, and distributed the Vehicles with false or misleading fuel economy ratings;
- whether Ford knew, and for how long, that the testing certifying the fuel efficiency of the Vehicles was tainted by inaccurate information;
- whether consumers overpaid for their Vehicles at the point of sale; and
- whether class certification is appropriate.

Adjudicating these and other common issues in a single transferee venue will benefit the parties and witnesses and promote judicial efficiency by allowing a single court to coordinate the pretrial proceedings governing claims with these issues.  The "potential for conflicting or overlapping class actions presents one of the strongest reasons for transferring such related actions" into an MDL. *In re Plumbing Fixtures*, 308 F. Supp. 242, 244 (J.P.M.L. 1970).[3]  Moreover, the Panel has repeatedly coordinated actions pending in different jurisdictions that arose out of common allegations involving automobiles.  *See, e.g.*, *In re Ford Fusion & C-Max Fuel Econ. Litig.*, 949 F. Supp. 2d 1368, 1369 (J.P.M.L. 2013) (centralizing seven actions pending in four districts,

---

[3] *See also In re Toys "R" Us-Del., Inc., Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 581 F. Supp. 2d 1377 (J.P.M.L. 2008) (consolidating just two putative class actions that were "brought on behalf of nearly identical putative nationwide classes").

because "[t]hese putative nationwide or statewide class actions share factual questions arising from Ford's alleged false or misleading advertising regarding the mileage estimates for its Fusion Hybrid and C-Max Hybrid vehicles."); *In re Am. Honda Motor Co., Inc., CR-V Vibration Mktg. & Sales Practices Litig.*, 140 F. Supp. 3d 1336, 1337 (J.P.M.L. 2015) (centralizing six actions pending in five districts that arose out of common allegations regarding a vehicle defect); *In re Chrysler LLC 2.7 Liter V-6 Engine Oil Sludge Prods. Liab. Litig.*, 598 F. Supp. 2d 1372, 1373-74 (J.P.M.L. 2009) (centralizing claims of five putative class actions alleging an engine defect).

### 2. Transfer will serve the convenience of the parties and witnesses and will promote the just and efficient conduct of the Actions.

According to the Manual for Complex Litigation, the following four factors govern whether transfer will facilitate the convenience of the parties and promote the just and efficient conduct of the transferred cases:

1. The elimination of duplicative discovery;

2. The avoidance of conflicting rules and schedules;

3. The reduction of litigation cost; and

4. The conservation of the time and effort of the parties, attorneys, witnesses, and courts.

Manual for Complex Litigation (Fourth), § 20.131, at 219.

With three cases in three different Districts—and with those numbers almost certainly about to materially increase—the size of this litigation weighs in favor of transfer.[4] Indeed, without

---

[4] The Panel has previously transferred cases to form MDLs based upon a similar number of pending actions. *See, e.g., In re: Park W. Galleries, Inc., Mktg. & Sales Practices Litig.*, 645 F. Supp. 2d 1358, 1360 (J.P.M.L. 2009) (ordering transfer where three actions were pending in three districts); *In re: Optical Disk Drive Prod. Antitrust Litig.*, 701 F. Supp. 2d 1382 (J.P.M.L. 2010) (ordering transfer of five cases pending in two total districts); *In re Wireless Telephone Replacement Protection Programs Litig.*, 180 F. Supp. 2d 1381, 1382 (J.P.M.L. 2002) (granting transfer of three consumer protection cases); *In re Philadelphia Life Ins. Co. Sales Practices Litig.*, 149 F. Supp. 2d 937, 938 (J.P.M.L. 2001) (granting transfer of two deceptive

7

transfer, this litigation, which addresses some of the most popular automobiles in the United States, would create the needless and unnecessary expense of overlapping discovery (including expert discovery) and judicial inefficiency. Further, different federal courts would make duplicative rulings on the same issues, which could result in contradictory findings on significant pretrial disputes. Litigation of this scope and importance should not be beset with such inconsistencies and inefficiencies.

### a.  Transfer will Eliminate Duplicative Discovery.

Because each action is based upon the same facts, plaintiffs in each of the Actions are, in turn, likely to seek overlapping discovery. *See In re Auto Body Shop*, 2014 WL 3908000, at *1-2 (J.P.M.L. 2014) (noting that transfer was appropriate to eliminate duplicative discovery when the actions shared a common factual core). The Actions are also likely to involve complicated technical issues regarding vehicle testing processes and calculations that will most likely result in substantial expert discovery and *Daubert* briefing and hearings. That fact alone militates in favor of transfer. *See, e.g., In re Natrol, Inc. Glucosamine/Chondroitin*, 2014 WL 2616783, at *1 (J.P.M.L. 2014). Similarly, plaintiffs in each of the Actions are likely to seek to depose many of the same Ford witnesses, which again favors centralization. *See, e.g., In re Auto Body Shop*, 2014 WL 3908000, at *1 (transfer to a single judge was beneficial because he or she could "structure pretrial proceedings to accommodate all parties' legitimate discovery needs while ensuring that common witnesses are not subjected to duplicative discovery demands"); *In re Enfamil Lipil*, 764 F. Supp. 2d 1356, 1357 (J.P.M.L. 2011) ("Centralizing the actions will allow for the efficient

---

insurance sales cases and finding that such transfer would promote the just and efficient conduct of the litigation). Regardless, by the time the Panel hears this motion, the number of constituent cases in this proposed MDL will almost certainly exceed the present three Actions.

resolution of common issues and prevent unnecessary or duplicative pretrial burdens from being placed on the common parties and witnesses.").

Given the similarity of the Actions and the potential for duplicative discovery, transfer would inevitably conserve the parties' resources. *See, e.g., In re Air Crash at Dallas/Fort Worth Airport*, 623 F. Supp. 634, 635 (J.P.M.L. 1985). It would also conserve the courts' resources, as it would assign responsibility for overseeing a pretrial plan to one judge as opposed to many different federal judges. *See, e.g., In re PineIntel*, 342 F. Supp. 2d 1348, 1349 (J.P.M.L. 2004).

### b. Transfer will Avoid Conflicting Rules and Schedules.

The Panel considers the possibility of inconsistent rulings on pretrial issues because of the possible *res judicata* or collateral estoppel effects on other cases. *See In re Enron Securities Derivative & ERISA Litig.*, 196 F. Supp. 2d 1375, 1376 (J.P.M.L. 2002) (granting a transfer in part to prevent inconsistent pretrial rulings, particularly with respect to questions of class certification).

Pretrial procedures will necessarily involve motions to dismiss, discovery motions, *Daubert* motions, and class certification motions. Conflicting rulings on these motions will cause unnecessary confusion and duplicative effort. Further, although only three district courts have cases now, given the sheer number of affected Vehicles, there will undoubtedly be many more materially similar cases filed across the United States.

Section 1407 transfer is the most efficient way to ensure that pretrial processes across all of these cases are uniformly litigated and adjudicated, thereby avoiding the situation where multiple courts reach contrary conclusions and potentially subject litigants to conflicting responsibilities and obligations.

    **c.**  **Transfer will Reduce Litigation Costs and conserve the time and effort of the parties, attorneys, witnesses, and courts.**

Each of the Actions, and the many tag-along actions likely to follow, will benefit from having a single transferee judge address and adjudicate issues related to discovery and pretrial motion practice. Otherwise, courts and lawyers may be briefing the same issues in several different district courts, across several Circuits, with conflicting laws, witnesses may be called to depositions in numerous cases, and third parties may be called to produce documents and witnesses in several different cases.

  **B.**  **The Eastern District of Michigan Is the Most Appropriate Transferee Forum.**

The Panel can consider the nexus between the transferee forum and the parties to the litigation when resolving transfer requests under 28 U.S.C. § 1407. A significant "nexus" exists when a party who is common to all actions (*e.g.*, the sole defendant) is headquartered or has facilities that are located within the transferee court's jurisdiction, such that relevant witnesses and documentary evidence common to all the actions are likely to be found there. *See, e.g., In re Equifax, Inc.*, MDL No. 2800, 2017 WL 6031680, at *2 (J.P.M.L. Dec. 6, 2017) (transferring actions to the district where the main defendant is headquartered as "relevant documents and witnesses thus likely will be found there."); *In re Wells Fargo Auto Ins. Mktg. & Sales Practices Litig.*, MDL No. 2797, 2017 WL 4737285, at *1 (J.P.M.L. Oct. 19, 2017) ("it is alleged that key entities and individuals with direct responsibility for the alleged conduct in this litigation are located in [the transferee] district and, therefore, relevant documents and witnesses may be located there."); *In re Google Inc. St. View Elec. Commc'ns Litig.*, 733 F. Supp. 2d 1381, 1382 (J.P.M.L. 2010) ("[t]he sole defendant, Google, is headquartered there, and most relevant documents and witnesses are likely located there."); *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices*

*Litig.*, 381 F. Supp. 2d 1383, 1384 (J.P.M.L. 2005) ("relevant discovery will likely be found within this district, because Sears's corporate headquarters and many of its documents and witnesses are located there"); *St. Jude Med., Inc., Silzone Heart Valves Products Liab. Litig.*, MDL No. 1396, 2001 WL 36292052, at *2 (J.P.M.L. Apr. 18, 2001) (transferring litigation to district because "as the situs of the headquarters of the sole defendant in all actions, the district is likely to be a substantial source of witnesses and documents subject to discovery").

With several excellent, Detroit-based,[5] judges available for assignment of this litigation, the United States District Court for the Eastern District of Michigan is the most appropriate transferee district for this litigation. Ford is based there, so that district is the locus of events and witnesses; neither of the other fora in which the Actions are pending (M.D. Ala. and C.D. Ill.) possesses a comparable evidentiary nexus or relevant business presence. The Panel regularly transfers cases to the district where the defendant is located. *See, e.g.*, *In re Equifax*, 2017 WL 6031680, at *2; *In re: Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices, & Prod. Liab. Litig.*, 732 F. Supp. 2d 1375, 1377 (J.P.M.L. 2010). Indeed, the Panel has centralized other litigation against Ford there. *See In re Ford Motor Co. Speed Control Deactivation Switch Prod. Liab. Litig.*, 398 F. Supp. 2d 1365, 1367 (J.P.M.L. 2005) ("We are persuaded that the Eastern District of Michigan is an appropriate transferee forum for this litigation . . . [as it] is a likely source of relevant documents and witnesses inasmuch as Ford's headquarters are located there."). Moreover, one of the three Actions (*Lloyd*) is pending in this district. *See, e.g., In re WellPoint, Inc., Out-of-Network UCR Rates Litig.*, 652 F. Supp. 2d 1375, 1376 (J.P.M.L. 2009) (selecting

---

[5] Although Judge Cleland is the judge in *Lloyd*, he is on senior status and sits in Port Huron, Michigan, which is: (a) more than *three times* further away from Detroit Metropolitan Airport than the federal courthouse in Detroit is (75.9 miles versus 20.4 miles); and (b) almost *six times* further away from Ford's Dearborn, Michigan headquarters than the federal courthouse in Detroit is (66.2 miles versus 11.4 miles).

11

transferee district where "three actions are already pending"). Additionally, the Panel has recognized that "the Eastern District of Michigan provides a geographically central location for [a] nationwide litigation." *In re Rio Hair Naturalizer Prod. Liab. Litig.*, 904 F. Supp. 1407, 1408 (J.P.M.L. 1995). As of April 15, 2019, only three MDLs are currently pending in the Eastern District of Michigan (Nos. 2311, 2744, and 2818), which all involve automobiles, like this litigation does.[6] *See, e.g., In re Packaged Ice Antitrust Litig.*, 560 F. Supp. 2d 1359, 1361 (J.P.M.L. 2008) (finding the Eastern District of Michigan an "appropriate transferee district for pretrial proceedings" because the district is geographically central and offers "favorable caseload conditions").

Transfer of the pending Actions to the Eastern District of Michigan will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation.

**IV.   CONCLUSION**

For the above-stated reasons, Movants respectfully request that the Panel transfer the Actions set forth on the attached Schedule and all subsequently filed tag-along cases for coordinated or consolidated pretrial proceedings in the United States District Court for the Eastern District of Michigan.

---

[6] Michigan is the worldwide epicenter of the automotive industry and has the largest concentration of automotive engineering expertise, including the Society for Automotive Engineers ("SAE") which maintains its largest office in suburban Detroit. Detroit Regional Chamber, *Michigan is Auto, Assets of the Motor State*,
http://www.detroitchamber.com/wp-content/uploads/2013/01/Michigan_Is_Auto_Report_1.0_Final.pdf (last visited May 9, 2019).

Dated: May 9, 2019

Respectfully submitted,

/s/ *Adam J. Levitt*
Adam J. Levitt
John E. Tangren
Adam Prom
**DiCELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois  60602
(312) 214-7900
alevitt@dicellolevitt.com
jtangren@dicellolevitt.com
aprom@dicellolevitt.com

*Counsel for Plaintiff Ryan Hubert*

E. Powell Miller
Sharon S. Almonrode
William Kalas
**THE MILLER LAW FIRM, P.C.**
950 West University Drive, Suite 300
Rochester, Michigan  48307
(248) 841-2200
epm@millerlawpc.com
ssa@millerlawpc.com
wk@millerlawpc.com

*Counsel for Plaintiff Ryan Hubert*

Joseph G. Sauder
Matthew D. Schelkopf
Joseph B. Kenney
**SAUDER SCHELKOPF LLC**
555 Lancaster Avenue
Berwyn, Pennsylvania  19312
(610) 200-0581
jgs@sstriallawyers.com
mds@sstriallawyers.com
jbk@sstriallawyers.com

*Counsel for Plaintiff Ryan Hubert*

/s/ *W. Daniel "Dee" Miles, III*
W. Daniel "Dee" Miles, III
H. Clay Barnett, III
Leslie L. Pescia
Christopher Daniel Baldwin
**BEASLEY ALLEN CROW METHVIN
    PORTIS & MILES, P.C.**
272 Commerce Street
Montgomery, Alabama  36104
 (334) 269-2343
Dee.Miles@beasleyallen.com
Clay.Barnett@beasleyallen.com
Leslie.Pescia@beasleyallen.com
Chris.Baldwin@beasleyallen.com

*Counsel for Plaintiff William Don Cook*

Benjamin L. Bailey
Jonathan D. Boggs
**BAILEY & GLASSER LLP**
209 Capitol Street
Charleston, West Virginia  25301
(304) 345-6555
bbailey@baileyglasser.com
jboggs@baileyglasser.com

*Counsel for Plaintiff William Don Cook*

13